# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOP ENERGY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| JOHN DAVID SKINNER, ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

<u>The Parties</u>

1. The plaintiff HOP Energy, LLC ("HOP") is a Delaware limited liability company, with its principal place of business located at 4 West Red Oak Lane, Suite 310, White Plains, New York. Its sole member is HOP Energy Holdings, Inc., a Delaware corporation with its principal place of business in New York.

2. HOP is engaged in the business of, among other things, the sale and delivery of heating oil and commercial fuels, including selling and delivering heating oil to commercial customers, and related services. HOP's business covers the Northeast and Mid Atlantic area of the United States, including Massachusetts.

3. Upon information and belief, the defendant John David Skinner is a citizen of the Commonwealth of Massachusetts, residing at 32 Abbott Lane, Chelmsford, Massachusetts 01824.

Jurisdiction and Venue

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as this action involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the defendant resides in this district, a substantial part of the events giving rise to the claim occurred in this district and the defendant is subject to personal jurisdiction in this district.

FIRST CAUSE OF ACTION
Breach of Contract

6.     On or about November 16, 2007, HOP hired Skinner as a commercial heating oil salesperson to solicit commercial customers to purchase heating oil from HOP.

7.     On or about November 26, 2008, Skinner executed HOP's Employee Handbook, setting forth his obligations of confidentiality and non-competition/non-solicitation (the "Agreement").  (A copy of the Agreement is attached hereto as Exhibit A.)

8.     The confidentiality provision at page 16 of the Agreement states, in pertinent part, as follows:

> Employee will not, during the term of his or her employment  or for eighteen (18) months thereafter, directly or indirectly disclose to any other person or entity, or use for Employee's own account, or for other than the Company's business, any Confidential Information or Materials without first obtaining the written consent of the Company. Employee shall at all times keep confidential all Confidential Information or Materials of the Company and any confidential information of any customers or clients of the Company.
>
> Some examples of confidential and proprietary information are:  HOP Energy's business and competitive plans, its finances, its customer lists, its

pricing plans, its product purchasing and storage terms, and its delivery scheduling.

9. While at HOP, Skinner was provided confidential and proprietary information by HOP, including its business and competitive plans, its finances, its customer lists, its pricing plans, its product purchasing and storage terms, and its delivery scheduling.

10. The non-solicitation provision at page 18 of the Agreement states as follows:

> For a period of eighteen (18) months following the termination of your employment you agree that you shall not contact, have contact with or solicit any customer or supplier of the Company [HOP] in order to have the customer or supplier terminate its relationship with the Company.

11. From November 16, 2007 through March 27, 2013, Skinner was employed as a salesperson for HOP at its Alliance Express operating division in Chelsea, Massachusetts. His territory covered the eastern half of Massachusetts, including the Boston area. He was responsible for managing the portfolio of HOP customer accounts and growing new accounts for this office. He was responsible for all of the approximately 975 commercial customer accounts, and was provided access to HOP's confidential and proprietary information concerning pricing and delivery scheduling, among other information, for its customers. Skinner worked closely with many customers, including the top 30-40 largest volume customers in this territory.

12. On March 27, 2013, Skinner's employment with HOP was terminated.

13. By letter dated April 5, 2013, HOP reminded Skinner of his post-employment obligations. (A copy of this April 5, 2013 letter is annexed hereto as Exhibit B.)

14. Upon information and belief, shortly after leaving HOP, Skinner accepted employment as a salesperson with, and is currently employed by, Devaney Energy, Inc. ("Devaney") located in Newton, Massachusetts. Devaney is a competitor of HOP in the

commercial heating oil business in the eastern Massachusetts area.

15. Since Skinner left HOP, HOP lost the following accounts to Devaney: (i) Marina Kaufman, (ii) Michael Moskow, (iii) Micozzi Management, (iv) Commonwealth Tank, (v) Doherty Garage, and (vi) Grace Cleaners. All of these customers had been serviced by Skinner when he was at HOP. To HOP's knowledge, none of these customers had raised any recent complaints to HOP. In sum, these customers purchased approximately 300,000 gallons of heating oil from HOP annually.

16. Upon information and belief, HOP's customers were solicited by Skinner to transfer their business to Devaney.

17. As part of his solicitation, upon information and belief, Skinner had already provided the customers with his personal cellphone number as the contact information for HOP, which allowed him to solicit a HOP's customer's business for Devaney if contacted by the customer. It was incumbent upon Skinner to inform the customer that he no longer worked for HOP and to not solicit its customers.

18. Upon information and belief, Skinner used his intimate knowledge of HOP's customers from working directly with these customers in order to solicit their business for Devaney.

19. As part of his solicitation, upon information and belief, Skinner used his knowledge of HOP's confidential information concerning its business and competitive plans, its finances, its customer lists, its pricing plans, its product purchasing and storage terms, and its delivery scheduling.

20. By letter dated May 8, 2013, HOP demanded that Skinner cease and desist these activities in violation of his post-employment obligations. (A copy of this May 8, 2013 letter is

annexed hereto as Exhibit C.)  Skinner has ignored this demand.

21. The foregoing actions of Skinner constitute a breach of the Agreement.

22. HOP has been damaged thereby.

23. Because Skinner engaged in egregious conduct and his actions were malicious, intentional, and without justification, and were activated by reprehensible motives, HOP is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
Breach of Fiduciary Duty

24. Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 as if fully set forth herein.

25. Skinner was in a position of trust and owed a fiduciary duty to HOP.

26. Skinner breached his fiduciary duties by knowingly, intentionally and improperly interfering with HOP's relationship with its customers by soliciting them to terminate their relationship with HOP and transfer their business relationship with HOP to his new employer.

27. Skinner also breached said duties from disclosing and using HOP's confidential and proprietary information to solicit HOP's customers.

28. The foregoing conduct of Skinner constitutes a breach of his fiduciary duty to HOP.

29. Because Skinner engaged in egregious conduct and their actions were malicious, intentional, and without justification, and were activated by reprehensible motives, HOP is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
Permanent Injunction

30. Plaintiff repeats and realleges the allegations in paragraphs 1-29 as if fully set forth herein.

{Client Files\LIT\240393\0999\HOP\02712023.DOC;1}
5

31. Skinner solicited HOP customers to solicit HOP customers in breach of the Agreement.

32. Skinner had knowledge of HOP's confidential and proprietary information, which was not known to the general public or competing businesses, and upon information and belief, used such information to solicit HOP's customers.

33. The foregoing actions constitute breach of the Agreement.

34. HOP has spent considerable time and resources to cultivate the business of its customers and to establish their repeat business, which HOP has successfully been able to do until the wrongful actions of Skinner.

35. Skinner's wrongful actions have caused HOP the loss of customers, good will and confidential and proprietary information.

36. Unless enjoined, Skinner will continue to breach the Agreement, wrongfully solicit HOP customers, disclose and use HOP's confidential and proprietary information and cause damage to HOP's good will.

37. As a result of Skinner's actions, HOP has been irreparably harmed.

38. HOP has no adequate remedy at law.

39. No prior application for the relief sought herein has been brought by HOP.

WHEREFORE, plaintiff claims the following relief:

1. Damages, including lost profits, in the amount to be determined at trial, exceeding $75,000, excluding interest and costs;

2. Interest;

3. Punitive damages;

4. Such other and further relief as the Court deems just, proper and equitable.

                                          HOP ENERGY, LLC  
                                          By Its Attorneys,

                                          /s/ Louis M. Ciavarra  
                                          Louis M. Ciavarra (BBO #546481)  
                                          Bowditch & Dewey, LLP  
                                          311 Main Street  
                                          P. O. Box 15156  
                                          Worcester, MA 01615-0156  
                                          Tel. (508) 926-3408  
                                          Fax  (508) 929-3011  
Date:  May 16, 2013                    Email:  lciavarra@bowditch.com

{Client Files\LIT\240393\0999\HOP\02712023.DOC;1}